A07A1971. BENSON-JONES v. SYSCO FOOD SERVICES OF ATLANTA, LLC.
(651 SE2d 839)

JOHNSON, Presiding Judge.

Frieda Benson-Jones sued Sysco Food Services of Atlanta, LLC, among others, for the wrongful death of her 15-year-old son, Antonio Benson, who was fatally injured while operating a forklift in a Sysco warehouse.[1] The trial court granted Sysco's motion for summary judgment. Benson-Jones appeals, arguing that the trial court erred because a jury could conclude that (i) Sysco was negligent per se because it violated child labor laws and regulations intended to protect her son, (ii) Sysco was negligent in permitting a minor under 16 to work in its warehouse, (iii) Sysco's independent contractor was negligent, and the contractor's negligence was imputable to Sysco, and (iv) Sysco was liable under principles of premises liability. For the reasons that follow, we disagree and affirm.

"To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[2] Our review is de novo.[3]

So viewed, the evidence shows the following. Sysco owned and operated a warehouse in College Park. Sysco contracted with Johnny

---

[18] See generally id.

[1] An insurance coverage dispute among Sysco, its contractor, and their insurers arising out of the forklift accident was previously before this court in *Kay-Lex Co. v. Essex Ins. Co.*, 286 Ga. App. 484 (649 SE2d 602) (2007).

[2] (Footnote omitted.) *Smith v. Gordon*, 266 Ga. App. 814 (1) (598 SE2d 92) (2004). See OCGA § 9-11-56; *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[3] *Oasis Goodtime Emporium I v. Crossroads Consulting Group*, 255 Ga. App. 375, 376 (565 SE2d 573) (2002).

L. Bunton, Jr. d/b/a Kaylex Company[4] ("Kaylex") to provide unloading services at the warehouse. The contract provided that Kaylex was an independent contractor with the exclusive right to control its own activities with respect to "hours, times, terms of employment, etc." Sysco retained the right to exclude Kaylex freight handlers from its premises or to require Kaylex to substitute personnel working on its premises, but Kaylex retained the exclusive right to hire and discharge its employees. Among other things, Kaylex agreed to fully comply with all applicable laws, rules, and regulations applicable to Kaylex and the services provided under the contract.

Gregory Jones, Benson's stepfather, worked as a supervisor for Kaylex for many years. Jones hired his stepson, a 235-pound high school football player, to work for Kaylex during the summers of 2002 and 2003 as a "lumper" unloading trucks at Sysco's warehouse. Kaylex's principal, Johnny Bunton, initially authorized Jones to hire Benson, who Bunton had known since Benson was a seven or eight-year-old child. A few weeks before Benson was injured, however, Bunton noticed Benson working on the warehouse docks and realized that Sysco would "have a cow" if it knew 15-year-old Benson was working there. According to Jones, Bunton told Jones that Benson could no longer be on Kaylex's payroll, but did not expressly forbid Jones from bringing Benson to the warehouse. Benson continued to unload trucks at the warehouse while Jones used the identity of a former Kaylex employee to account for Benson's work. Jones then cashed the checks payable to the former employee and paid the money to Benson.

On the morning of June 19, 2003, Benson asked Jones for permission to let another Kaylex employee show Benson how to use a stand-up forklift, a machine he had never previously operated. Benson began moving pallets around with the forklift. Around 10:00 a.m., Benson drove the forklift into a door. The forklift tipped over onto Benson, causing the injuries that led to his death. Sysco owned and maintained the forklifts used by Kaylex employees, including the one used by Benson. There were no warning signs on the forklifts prohibiting their operation by persons under the age of 18.

1. (a) Benson-Jones claims that Sysco's violation of Georgia laws and state and federal regulations intended to protect minors such as Benson was negligent per se and was a proximate cause of her son's death. She contends that OCGA § 39-2-11 (a) and 29 CFR § 570.5 required Sysco to obtain evidence of a certificate of Benson's true age before permitting him to work in its warehouse. However, it is

---

[4] After some inconsistent usage, the parties stipulated that this was Kaylex's correct name.

undisputed that Benson was not a Sysco employee. 29 CFR § 570.5 is specifically directed to the minor's "prospective employer."[5] OCGA § 39-2-11 (a) is also directed to employers, providing that minors between the ages of 12 and 16 shall not "be employed *by* or permitted to work *for* any person, firm, or corporation" without the appropriate age certificate.[6] Further, the employment certificates are to be issued only upon, among other things, submission of a statement from the prospective employer indicating that "if he were furnished with a certificate from the school superintendent as required by law, he could employ the minor. . . ."[7] After termination of employment of a minor between the ages of 12 and 16, "the employer shall return the employment certificate to the issuing officer."[8] Accordingly, because Sysco did not employ Benson it did not violate its duty to Benson by failing to obtain a certificate showing his age.

Benson-Jones also contends that Sysco violated OCGA § 39-2-2, which provides: "No minor under the age of 16 years shall be employed or permitted to work at any occupation or in any position which the Commissioner of Labor may declare by regulation dangerous to life and limb or injurious to the health or morals of such minor." The Commissioner of Labor has declared that no minor under 16 shall be employed to work at hazardous occupations and locations which include, as relevant here, occupations connected with power driven machinery, motorized vehicles, the loading of goods to or from trucks, and warehouses.[9] Benson-Jones contends that OCGA § 39-2-2 and the accompanying regulations impose an affirmative duty on Sysco to prevent Benson from working in its warehouse. Since Benson did not work for Sysco, Benson-Jones relies on the statute's provision that minors under the age of 16 shall not be "permitted to work" in dangerous occupations.

OCGA § 39-2-2 speaks to a minor's "occupation" or "position."[10] The statute and accompanying regulation do not prohibit a minor's presence, per se, in a location such as a warehouse.[11] While Sysco had the power to exclude persons from its premises, including Kaylex employees, Kaylex assumed sole responsibility for the direction and control of its personnel. Further, as discussed below, there is no

---

[5] 29 CFR § 570.5 (c).

[6] (Emphasis supplied.) OCGA § 39-2-11 (a).

[7] OCGA § 39-2-11 (c) (2).

[8] OCGA § 39-2-13 (a).

[9] Ga. Comp. R. & Regs. r. 300-7-2-.01 (a) (1), (2), (7) (viii), (7) (ix).

[10] See OCGA § 39-2-2; Ga. Comp. R. & Regs. r. 300-7-2-.01 (a) (8).

[11] Furthermore, even in a location deemed hazardous for employment by minors under the age of 16, there is an exception for an occupation involving "[o]ffice work where administrative policy forbids access to hazards." Id. at (a) (8).

evidence which shows that Sysco knew or had reason to know that Benson was under 16. Thus, if Sysco had permitted Benson's employment in a dangerous occupation, it did so only to the extent that it failed to affirmatively ascertain that he was a minor performing illegal work on its premises and then failed to exercise its right to exclude him. Such an expansive interpretation of "permitted to work" would represent a significant burden to owners who may have nonemployees working on their premises. Further, such an interpretation is not demanded by the statutory language or supported by any authority cited by Benson-Jones.[12] Accordingly, we conclude that Benson's work at a hazardous occupation on Sysco's premises for a third party does not, in and of itself, demonstrate that Sysco was in violation of the child labor laws.[13]

(b) Benson-Jones also contends that because Sysco knew or should have known that Benson was under 16 years of age, Sysco was negligent in allowing him to work in the warehouse. Pretermitting whether Sysco would have breached its duty to Benson-Jones if it knowingly allowed him to work on its premises, this argument fails because Benson-Jones does not point to evidence which creates an issue of material fact as to Sysco's knowledge, either actual or constructive, that Benson was under 16 on the date of his injury.

Benson-Jones contends that all Kaylex employees were required to show identification and sign in with warehouse security guards before entering the warehouse, and that because Benson had a learner's permit the security guards must have seen it and necessarily known that he was under 16. But even construed most favorably to Benson-Jones, the evidence does not warrant this inference. According to Sysco employee Qunition Walton, Kaylex employees were supposed to sign in and have identification "on" them. The general procedure was "you have to show a badge or . . . sign in" to get past security. According to Kaylex employee Earl Valentine, he had to sign in but he did not show identification as well. Thus, if Benson had followed procedure he would have signed in but not necessarily shown identification. If he did show identification, it is a matter of speculation that he would have shown his learner's permit to the

---

[12] We have indicated that an owner may be found negligent per se for violation of the child labor laws if he enters into an independent contractor relationship in bad faith for the purpose of avoiding responsibility to persons employed on the owner's property, but Benson-Jones does not assert that Sysco did not act in good faith in entering into its contractual relationship with Kaylex. See *Talmage v. Tift*, 25 Ga. App. 639 (104 SE 91) (1920).

[13] Because we find infra that there is no material issue of fact as to whether Sysco knew or had reason to know that Benson was under the age of 16, we do not reach the issue of whether an owner who knows or has reason to know that its independent contractor is employing a minor under 16 to perform a dangerous occupation on the owner's premises is in violation of OCGA § 39-2-2.

guards.[14] "[A]n inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility."[15]

Benson-Jones also contends that Sysco knew that Benson was under 16 years of age because Walton knew that Benson played high school football.[16] But according to Walton's affidavit, he did not know in the summer of 2003 that Benson was under 18. "Where, as here, direct and positive testimony is presented on an issue, the opposing party must show some other fact which contradicts the testimony."[17] In view of Walton's direct testimony, Benson-Jones cannot show that Walton knew that Benson was under 16 based only on his knowledge that the 235-pound Benson played high school football. It follows that the trial court did not err in granting summary judgment on Benson-Jones' claim that Sysco was negligent in allowing Benson to work in its warehouse.

2. Benson-Jones also argues that Kaylex's violations of the child labor law were imputable to Sysco, and that the trial court therefore erred in granting summary judgment to Sysco. We disagree.

"An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer."[18] Benson-Jones relies on an exception to the general rule that the person employing the independent contractor is liable for the wrongful act of the contractor "[i]f the wrongful act is the violation of a duty imposed by statute."[19] The exception applies only where the independent contractor has breached the statutory duty of the person employing the independent contractor.[20]

Benson-Jones maintains that Kaylex failed to comply with the statutory duties imposed on Sysco by OCGA §§ 39-2-2 and 39-2-11 (a), as discussed supra. These duties, however, are the primary responsibility of the employer, and Benson-Jones does not refer us to any statutory or case authority for the proposition that a contractor is vicariously responsible for its independent contractor's violations of

---

[14] In addition, the guards would not stop everyone. Bunton deposed that because he "knew everybody out there," he "might just drive by the guard, toot the horn and wave and go on."

[15] (Citations and punctuation omitted.) *Cohen v. Hartlage*, 179 Ga. App. 847, 851 (348 SE2d 331) (1986).

[16] Benson-Jones also points to evidence that Walton knew that one of Benson's cousins worked in the warehouse in the summer of 2002. As with Benson, Walton knew that the cousin played high school football, but Walton did not testify that he knew the cousin's age.

[17] (Citation and punctuation omitted.) *Haley v. Regions Bank*, 277 Ga. 85, 88 (1) (586 SE2d 633) (2003).

[18] OCGA § 51-2-4.

[19] OCGA § 51-2-5 (4).

[20] *Cooper Tire & Rubber Co. v. Merritt*, 271 Ga. App. 16, 20 (1) (b) (608 SE2d 714) (2004).

the Georgia child labor laws. Accordingly, the trial court did not err in granting summary judgment to Sysco notwithstanding evidence that Kaylex did not comply with the Georgia child labor laws in employing Benson.

3. Benson-Jones also contends that the trial court erred in granting summary judgment to Sysco on her premises liability claim. Again, we disagree.

> OCGA § 51-3-1 imposes a nondelegable duty upon an owner or occupier of land to exercise ordinary care in keeping the premises and approaches safe where the owner or occupier has, by express or implied invitation, induced others or led others to come upon the premises for any lawful purpose.[21]

Benson-Jones argues that the state has declared warehouses to be hazardous locations for all minors under the age of 16. Therefore, she contends, there is nothing Sysco could have done to make its premises safe for Benson except to exclude him.

As we noted above, OCGA § 39-2-2 and the accompanying regulation prohibit employment or work by a minor under 16 in a hazardous location such as a warehouse, not his presence. Benson-Jones cites no authority for the proposition that because Benson, a minor, was injured on its property that Sysco is necessarily subject to premises liability. Rather than strict liability, "[t]he crux of a premises liability case is the owner's superior knowledge of the hazard."[22]

Benson-Jones also contends that Sysco violated its duty to make the premises reasonably safe by failing to warn Benson that Georgia law prevented him from working in the warehouse or using any of the powered machinery therein, and by failing to post warnings on its forklifts prohibiting their operation by minors. As a general rule, "an owner or occupier of land is liable to invitees for injuries they sustain as a result of his failure to warn them of dangers which he was aware of, or in the exercise of reasonable care should have known."[23] However, "[a]n owner has no duty to foresee and warn against dangers which are not reasonably expected, and which would not occur except under exceptional circumstances or from unexpected

---

[21] *Bartlett v. Holder Constr. Co.*, 244 Ga. App. 397, 399 (535 SE2d 537) (2000).

[22] *Saunders v. Indus. Metals and Surplus*, 285 Ga. App. 415, 419 (3) (646 SE2d 294) (2007).

[23] (Citation omitted.) *Murphy v. Blue Bird Body Co.*, 207 Ga. App. 853, 859 (5) (429 SE2d 530) (1993).

acts of the person injured."[24] Here, there is no evidence demonstrating that Sysco could have reasonably expected persons under 16 to be working in its warehouse, and so did not breach a duty to warn Benson that he was excluded from working there or operating machinery on account of his age.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED SEPTEMBER 17, 2007.

*Cochran, Cherry, Givens, Smith & Sistrunk, Hezekiah Sistrunk, Jr., Warren N. Sams III*, for appellant.

*Hawkins & Parnell, Michael J. Goldman, Shapiro, Fussell, Wedge & Martin, Robert B. Wedge, Jason A. Cooper*, for appellee.

---

[24] (Citation omitted.) *Thomas v. Home Depot, U.S.A.*, 284 Ga. App. 699, 701 (644 SE2d 538) (2007).