SECOND DIVISION
ANDREWS, P. J.
MILLER and BRANCH, JJ.

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 23, 2015**

# In the Court of Appeals of Georgia

A15A1250. ROYAL v. GEORGIA FARM BUREAU MUTUAL
    INSURANCE COMPANY.

MILLER, Judge.

Robert Royal sustained serious injuries while hauling corn in a truck owned by Kim Eugene Williams. Royal sought to settle under both Williams's Georgia Farm Bureau Mutual Insurance Company ("Georgia Farm Bureau") Farm Package Policy and Auto Policy. After settling Royal's claim under the Farm Package Policy, Georgia Farm Bureau filed for a declaratory judgment to resolve Royal's claim under the Auto Policy. The trial court granted Georgia Farm Bureau's motion for summary judgment on the ground that Royal was excluded from coverage under the Auto Policy because he was Williams's employee at the time of the accident. Royal appeals, contending that the trial court erred in finding that he was an employee, rather than an independent contractor. For the reasons that follow, we affirm.

Summary judgment is proper where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. On appeal from the grant or denial of summary judgment, we conduct a de novo review, construing the evidence and all reasonable conclusions and inferences drawn therefrom in the light most favorable to the nonmovant.

(Footnotes omitted.) *Boatright v. Old Dominion Ins. Co.,* 304 Ga. App. 119, 120 (695 SE2d 408) (2010).

So viewed, the evidence shows that Williams is a farmer in Hazlehurst. Williams owned two trucks that he used to haul his crops and farming supplies. Williams employs a full-time lead driver on his farm. Williams also has a commercial driver's license ("CDL"). Williams also occasionally employed independent truckers, who owned their own trucks and paid for their own gas and maintenance, to haul corn. These truck drivers exercised control over how much grain was loaded into their trucks and how many loads they hauled, and they were paid by the bushel.

In August 2013, Williams hired Royal to transport corn from Williams's farm to a mill for a period of two weeks during the harvest. The only special skills and training required for Royal's position were knowing how to drive a truck and having a CDL. At the time he began working for Williams, Royal had just received his CDL,

he had no previous experience hauling corn or any other commodity and this was his first job driving a truck.

Royal drove one of Williams's trucks and did not own his own truck. Williams paid for the insurance, gas, and maintenance of the truck that Royal drove. Royal brought his own logbook, but he turned it over to Williams and never used it. All of the equipment that Royal used on the job was owned by Williams, and Williams could fire Royal. Royal worked for Williams full-time, ten to twelve hours a day and did not work for anyone else. Royal understood that he would be paid by the bushel.

Williams or Williams's lead truck driver told Royal what time to be at work each day, what time to leave, where to go, and how to do his job. Farm workers loaded the truck with corn and Royal had no control over how much corn he hauled in each load. Royal followed the lead driver from the farm to the mill, and he always followed the instructions of the lead driver. A few days after he began working for Williams, Royal was in a serious accident in Williams's truck while hauling a load of corn.

On appeal, Royal contends that the trial court erred in finding that he was excluded from coverage under Williams's Auto Policy because he was Williams's employee rather than an independent contractor. We disagree.

3

In construing an insurance policy, we begin, as with any contract, with the text of the contract itself. One of the most well-established rules of contract construction is that the contract must be construed as a whole, and the whole contract should be looked to in arriving at the construction of any part.

(Citation omitted.) *Wade v. Allstate Fire and Cas. Co.*, 324 Ga. App. 491, 492-493 (751 SE2d 153) (2013). Here, Williams's Auto Policy excluded from coverage any bodily injury to "an employee of the 'insured' arising out of and in the course of employment by the 'insured'" or "any fellow employee of the 'insured' arising out of and in the course of the fellow employee's employment." The Auto Policy does not define "employee." Therefore, we attribute to that term its usual and common meaning. See *Taylor Morrison Svcs., Inc. v. HDI-Gerling America Ins. Co.*, 293 Ga. 456, 459 (1) (746 SE2d 587) (2013).

To determine whether a person is an employee or an independent contractor, the test

is whether the employer, under the contract, whether oral or written, has the right to direct the time, the manner, the methods, and the means of the execution of the work . . . The right to control the manner and method means the right to tell the employee how he shall go about doing the job in every detail, including what tools he shall use and what procedures he shall follow.

4

(Citations and punctuation omitted.) *RBF Holding Co. v. Williamson*, 260 Ga. 526 (397 SE2d 440) (1990).

The undisputed facts in this case show that Williams controlled the time, manner, method, and means of execution of Royal's work. Notably, the entire time Royal worked for Williams, Royal simply followed the instructions of Williams or Williams's lead driver. Williams and his lead driver controlled Royal's hours, where he went, how much corn he hauled, and how he did his job. Williams provided Royal with all of his tools and equipment, and Williams could fire Royal. Accordingly, Royal was an employee of Williams. See *Boatright,* supra, 304 Ga. App. at 121 (1) (construction worker was an employee where employer provided worker with necessary tools and materials, worker was required to perform work as instructed by employer's foreman, and employer could discharge worker).

Despite the evidence set forth above, the trial court nonetheless considered additional factors, set out in the Restatement of Agency 2d, § 220, in determining whether Royal was Williams's employee.[1] Royal argues that he is an independent

[1] Under the Restatement of Agency 2d, § 220 (1), "[An employee] is a person employed to perform service for another in his affairs and who, with respect to his physical conduct in the performance of the service, *is subject to the other's control or right to control*." (Emphasis supplied.)
Although control is the determinant factor under the Restatement:

contractor under the factors set out in the Restatement. Specifically, Royal argues that his occupation as a truck driver is distinct from Williams's occupation as a farmer; driving a truck is not a regular part of Williams's business; and Williams never intended for Royal to become a farm employee, as evident by the fact that Royal was never assigned to complete any other tasks besides transporting grain. The record, however, shows that Williams and his employees transport almost all of Williams's

[i]n determining whether one acting for another is [an employee] or an independent contractor, the following matters of fact, among others, are considered: (a) the extent of control which, by the agreement, the master may exercise over the details of the work; (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether or not the work is a part of the regular business of the employer; and (i) whether or not the parties believe they are creating the relationship of master and servant.

 Restatement of Agency 2d, § 220 (2); see also *Murphy v. Blue Bird Body Co.,* 207 Ga. App. 853, 854-855 (1) (429 SE2d 530) (1993) (noting that Georgia courts have cited with approval the Restatement factors).

crops, as well as other farm supplies, in Williams's own trucks Moreover, Williams employs a full-time driver on the farm and has a CDL himself. Thus, transporting crops is a part of Williams's farming business. See *Fieldstone Center, Inc. v. Stanley,* 216 Ga. App. 803, 805 (3) (456 SE2d 61) (1995) (delivery of stones to project site was part of the regular operation of business of selling and installing stone).

Royal also argues that trucking is a highly skilled job and he received little instruction or supervision, which indicates that he was an independent contractor. Even assuming that trucking is a highly skilled occupation, an employee's special skill is not determinative where an employer has control over the time, method and manner of the employment. See *Southern Gen. Ins. Co. v. Boerste,* 195 Ga. App. 665, 668 (2) (394 SE2d 566) (1990) (although pilot had special skills, he was an employee, not an independent contractor, because his employer controlled the destination and time of the flight).

Royal also argues that he was an independent contractor because he provided his own logbook, although he turned it over to Williams and never used it. Since Williams provided all of the tools and materials necessary for Royal's work and paid for the gas and maintenance of the truck, the fact that Royal supplied his own logbook is insufficient to raise a genuine issue of material fact as to Royal's status. See

7

*Boatright,* supra, 304 Ga. App. at 121 (1) (although construction worker provided his own hammer, measuring tape and tool belt, employer provided all other necessary tools and materials for work and thus construction worker was an employee as matter of law).

Royal also argues that his short-term employment indicates that he was an independent contractor. Contrary to Royal's argument, "[m]any seasonal businesses necessarily hire only seasonal employees, but that fact alone does not convert seasonal employees into seasonal independent contractors." *Secretary of Labor, U. S. Dept. of Labor v. Lauritzen*, 835 F2d 1529, 1537 (III) (E) (7th Cir. 1987); see, e.g., *Lee v. Satilla Health Svcs., Inc.*, 220 Ga. App. 885, 886-887 (1) (470 SE2d 461) (1996) (looking to federal cases in deciding whether a doctor was a hospital employee or an independent contractor).

Finally, Royal argues that he was an independent contractor because there was a discrepancy in the evidence as to whether he was to be paid hourly or by the bushel[2] and Williams never paid taxes on his wages. The method of payment, while it might be circumstantial evidence tending to indicate the relationship of the parties, is not

___

[2] The trial court, in viewing the record in the light most favorable to Royal, found that Royal believed he would be paid by the bushel.

8

a controlling or decisive factor. See, e.g., *Golosh v. Cherokee Cab Co.*, 226 Ga. 636, 639 (176 SE2d 925) (1970). Similarly, even if income tax and social security had been withheld, this could not overcome other undisputed evidence showing that Williams had the right to control the manner and method of Royal's work. See *Boatright*, supra, 304 Ga. App. at 122-123 (1).

Given the undisputed evidence that Williams controlled the time, manner, method and means of execution of Royal's work, none of the facts that Royal points to, even when viewed in the light most favorable to him, are sufficient to raise a genuine issue of material fact as to his work status. Accordingly, the trial court properly granted summary judgment to Georgia Farm Bureau.

*Judgment affirmed. Andrews, P. J., and Branch, J., concur.*